SELYA, Circuit Judge.
This appeal requires us to consider the interplay between the statute of limitations and the maintenance of derivative tort claims brought by relatives of an age discrimination plaintiff. The district court dismissed the relatives’ claims as time-barred, holding that the limitations period had begun to run when the relatives learned of the principal plaintiffs demotion and continued to run without interruption despite the pendency of that plaintiffs discrimination claim before the Equal Employment Opportunity Commission (EEOC). González Figueroa v. J.C. Penney P.R., Inc. (González I), 247 F.R.D. 274, 281-82 (D.P.R.2007). We affirm in substantial part but reverse as to a plaintiff who has not yet attained the age of majority.
I. BACKGROUND
Because this appeal follows the granting of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), we recount the facts alleged in the amended complaint and draw all plausible inferences in favor of the appellants. See Warren Freedenfeld Assocs., Inc. v. McTigue, 531 F.3d 38, 43 (1st Cir.2008); McCloskey v. Mueller, 446 F.3d 262, 266 (1st Cir.2006).
In 1970, the defendant, J.C. Penney Puerto Rico, Inc. (J.C. Penney), hired the principal plaintiff, Carlos González Figueroa (González). Over the next thirty-five years, González worked his way up the corporate ladder, receiving a series of promotions and pay increases. He ultimately rose to the position of assistant store manager.
In June of 2005, J.C. Penney insisted that González either retire or accept a demotion. González temporized over this Hobson’s choice and, on September 18, J. C. Penney unilaterally demoted him. In his new position — loss prevention manager — he absorbed a $25,000 per annum pay cut.
In roughly the same time frame, González applied for promotions to open positions within the organization that offered salaries comparable to what he had been earning. J.C. Penney awarded each such position to a younger employee.[1]
González, who was then 50 years of age, concluded that his demotion was part of a *317 concerted corporate campaign to oust older managers. On May 11, 2006, he filed an administrative complaint with the EEOC charging that J.C. Penney had engaged in unlawful age discrimination. On December 28, 2006, the EEOC issued a right-to-sue letter. See 29 U.S.C. § 626(e).
Three months later González, his wife Elsa, and their three children (Carlos, Karla Michelle, and Karla Marie) sued J.C. Penney in Puerto Rico’s federal district court. Their amended complaint is the operative pleading for purposes of this appeal.[2]
The amended complaint alleges violations of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-34, and certain Puerto Rico statutes. This appeal focuses on the plaintiffs other than González himself (the relatives). Insofar as the relatives are concerned, the gravamen of the action is their assertion that the discriminatory demotion gives rise to a separate but derivative cause of action in their favor under Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 5141.
Acting on the defendant’s motion to dismiss, the district court concluded that the relatives’ Article 1802 claims were time-barred. González I, 247 F.R.D. at 281-82. In reaching that conclusion, the court ruled that the one-year statute of limitations applicable to these claims began to run as soon as the relatives had notice of J.C. Penney’s allegedly discriminatory treatment of González. Id. at 281. Because the limitations period was not tolled as to other persons during Gonzalez’s exhaustion of his administrative remedies, the relatives’ claims were time-barred. Id. at 282.
The district court later entered a partial judgment against the relatives and certified that judgment as final under Federal Rule of Civil Procedure 54(b). This interlocutory appeal followed.
It soon came to light that the district court had certified the partial judgment without making any findings. We therefore remanded, albeit retaining appellate jurisdiction, so that the district court could remedy this oversight. See González Figueroa v. J.C. Penney P.R., Inc., No. 08-1032 (1st Cir. Jan. 18, 2008) (unpublished order). The district court responded promptly, see González Figueroa v. J.C. Penney P.R., Inc., Civ. No. 07-1258, 2008 WL 203654, at *2 (D.P.R. Jan. 23, 2008), and the appeal proceeded.
We pause at this point. Although Rule 54(b) allows the entry of judgment on a subset of the claims asserted in a multi-plaintiff, multi-claim action, “there is a long-settled and prudential policy against the scattershot disposition of litigation.” Spiegel v. Trs. of Tufts Coll., 843 F.2d 38, 42 (1st Cir.1988). Thus, a district court should certify a judgment under Rule 54(b) only after it has determined that (i) the ruling in question is final and (ii) there is no persuasive reason for delay. Id. at 42-43. We review the district court’s finality determination de novo and its finding that there is no just reason to delay for abuse of discretion. See U.S. Gen., Inc. v. Albert, 792 F.2d 678, 681 (7th Cir.1986).
In this instance, the finality of the disputed ruling is not open to question. See, e.g., Acha v. Beame, 570 F.2d 57, 62 (2d Cir.1978). The court’s explanation of why there was no reason for delay is more *318 problematic, but we cannot say that the court abused its discretion in making that finding. Consequently, we proceed to the merits.[3]
II. ANALYSIS
Appellate review of an order granting a motion to dismiss for failure to state a claim upon which relief can be granted is plenary. Young v. Lepone, 305 F.3d 1, 8 (1st Cir.2002). Where, as here, the dismissal is grounded on a statute of limitations, we will affirm only if the record, construed in the light most flattering to the pleader, leaves no plausible basis for believing that the claim may be timely. See Warren Freedenfeld Assocs., 531 F.3d at 44; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).
 As a general rule, we look to the pronouncements of a state’s highest court in order to discern the contours of that state’s law. See Andrew Robinson Int’l, Inc. v. Hartford Fire Ins. Co., 547 F.3d 48, 51 (1st Cir.2008). In regard to law-determination, Puerto Rico is the functional equivalent of a state. See Cabán Hernández v. Philip Morris USA, Inc., 486 F.3d 1, 11 (1st Cir.2007). Accordingly, an on-point decision of the Puerto Rico Supreme Court normally will control.
Here, however, the Puerto Rico Supreme Court has not spoken directly to the precise question that confronts us. Thus, our task is to vaticinate how that court likely would decide the issue. See Blinzler v. Marriott Int’l, Inc., 81 F.3d 1148, 1151 (1st Cir.1996). In carrying out that task, our first step is to consult pertinent statutory language and analogous decisions of the state supreme court. Andrew Robinson Int’l, 547 F.3d at 51; Warren v. United Parcel Serv., Inc., 518 F.3d 93, 98 (1st Cir.2008).
The relatives ground their claims in Puerto Rico’s generic tort statute (Article 1802), which under certain circumstances has been authoritatively interpreted to provide a cause of action in favor of close kinfolk of a victim of unlawful workplace discrimination. See Santini Rivera v. Serv. Air, Inc., 137 P.R. Dec. 1, 14 (1994); see also Maldonado Rodríguez v. Banco Cent. Corp., 138 P.R. Dec. 268, 276 (1995). The limitations period for actions brought pursuant to Article 1802 is one year. See P.R. Laws Ann. tit. 31, § 5298(2). That period ordinarily begins to run at the time that the aggrieved party knows (or should have known) of both his injury and the identity of the party who caused it. Torres v. E.I. Dupont De Nemours & Co., 219 F.3d 13, 18 (1st Cir.2000); Montañez v. Hosp. Metropolitano, 157 P.R. Dec. 96, 106 (2002).
In this case, the relatives allege that they have suffered emotional distress and consequential damages as a result of J.C. Penney’s discriminatory treatment of González. It is common ground that the relatives learned of the allegedly discriminatory conduct at around the time of González’s demotion. Thus, it would seem logical to conclude that the one-year statute of limitations on their claims began to run *319 at that moment and expired in September of 2006 (several months before they sued).
The relatives labor to cast doubt on this conclusion. Their most loudly bruited contention is that the principal plaintiffs successful prosecution of his discrimination claim is an element of their derivative claims and, thus, the latter claims will not accrue unless and until the principal plaintiff prevails. To use an analogy, the relatives would have us treat their derivative claims like claims for malicious prosecution, which do not accrue until the aggrieved party, in a separate proceeding, obtains a favorable termination of the criminal charge. See, e.g., Heck v. Humphrey, 512 U.S. 477, 489, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994).
That is a false analogy. A civil suit for malicious prosecution requires the favorable termination of an antecedent criminal proceeding. See id. at 484, 114 S.Ct. 2364. To the contrary, the relatives’ claims do not mix civil and criminal determinations but, rather, are wholly civil. The Puerto Rico Supreme Court has expressly held that a derivative claim premised on underlying discrimination requires proof only of the same three elements as any other claim under Article 1802, namely: (i) a compensable injury; (ii) a wrongful act on the defendant’s part; and (iii) a sufficiently tight causal nexus between the injury and the wrong. Santini Rivera, 137 P.R. Dec. at 6, 11; see Maldonado Rodríguez, 138 P.R. Dec. at 276. It necessarily follows that the Puerto Rico Supreme Court does not treat the principal plaintiffs success on the merits as an element of a relative’s derivative claim under Article 1802.
The relatives counter-attack on several fronts. The chief weapon that they wield is an intermediate appellate court decision. See González Vázquez v. Quest Diag., Inc., Civ. No. K DP 2004-0460, 2007 WL 1578045, at *5 (P.R. Cir. Apr. 30, 2007).
As a theoretical matter, intermediate appellate decisions may furnish helpful guidance as to the resolution of unsettled questions of state law. Andrew Robinson Int’l, 547 F.3d at 51. At first blush, that principle fits here; Puerto Rico’s highest court has not spoken directly to the question at hand. Nevertheless, the principle is not one of universal application-and in this instance, we find González Vázquez to be of little utility.
In the first place, the language from González Vázquez upon which the relatives rely is dictum. Although the court stated that a derivative claim accrues after the principal plaintiff has succeeded on the merits, this statement had no effect on the court’s ruling; the court determined that the derivative claim was timely regardless of the accrual date because it was filed within one year of the occurrence of the allegedly discriminatory conduct, see González Vázquez, 2007 WL 1578045, at *3.
In all events, the González Vázquez dictum contradicts an earlier decision of a different panel of the same court (which the González Vázquez panel neglects to cite). See Santos Cabrera v. R.J. Reynolds Tobacco Co., Civ. No. DPE 2004-0943, 2005 WL 3720002, at *7-8 (P.R. Cir. Dec. 15, 2005). The latter case holds squarely that an Article 1802 derivative discrimination claim accrues on the date that the relative becomes aware of the defendant’s allegedly discriminatory conduct. Id. at *8. In the course of its decision, the court explains that postponing the accrual of a derivative discrimination claim to the date that the principal plaintiff succeeds on his claim would be contrary to prevailing procedural norms. Id.
We believe that the Santos Cabrera analysis hews more closely than does the González Vázquez dictum to the knowledge-based accrual rule established in *320 Puerto Rico by statute and binding precedent. See, e.g., P.R. Laws Ann. tit. 31, § 5298(2); Montañez, 157 P.R. Dec. at 106; Colón Prieto v. Geigel, 115 P.R. Dec. 232, 245-47 (1984). We also believe that the González Vázquez dictum is unsound as a matter of policy: if that dictum were correct, it would prolong tremendously the life of such litigation, as derivative claimants would be able to bring suit years after the event (when the final appeal confirming judgment in favor of the principal plaintiff had been exhausted). Moreover, such a rule might require.two separate trials in a large number of cases. For these reasons, we regard the González Vázquez dictum as unpersuasive.
The relatives’ next attack derives from language used by the Puerto Rico Supreme Court suggesting that a relative’s right to compensation is contingent upon the success of the principal plaintiffs claim. See, e.g., Martínez Campos v. Sanco de Ponce, 138 P.R. Dec. 366, 371 (1995); Maldonado Rodríguez, 138 P.R. Dec. at 276. The relatives deduce from these authorities that the principal plaintiffs successful prosecution of his claim must occur before a derivative claim accrues. We do not agree.
Without exception, the Puerto Rico cases hawked by the relatives involve claims that were filed simultaneously, in a single proceeding, by the principal plaintiff and the derivative plaintiffs. See, e.g., Martínez Campos, 138 P.R. Dec. at 367; Maldonado Rodríguez, 138 P.R. Dec. at 270. In that configuration, a relative’s cause of action is “contingent” in the sense that, when and if the principal plaintiffs claim fails, so too does the relative’s derivative claim. See Maldonado Rodríguez, 138 P.R. Dec. at 276; see also Martínez Campos, 138 P.R. Dec. at 371. This makes perfect sense; in a joint suit, the failure of the principal plaintiff to prove a discriminatory act necessarily estops the relative from proving the “wrongful conduct” element of her derivative action.
Federal courts in this circuit have charted a similar course, dismissing relatives’ simultaneously filed derivative claims as an inevitable concomitant of the merits-based dismissal of the principal plaintiffs discrimination claim. See, e.g., Cabán Hernández, 486 F.3d at 12-13; Marcano-Rivera v. Pueblo Int'l, Inc., 232 F.3d 245, 258 n. 7 (1st Cir.2000); Baralt v. Nationwide Mut. Ins. Co., 183 F.Supp.2d 486, 487-89 (D.P.R.2002); Domínguez v. Eli Lilly & Co., 958 F.Supp. 721, 745 (D.P.R.1997). These decisions in no way suggest that the timing of the principal plaintiffs success or failure affects the accrual date of other plaintiffs’ derivative claims under Article 1802.
In a variation on this theme, the relatives assert that an individual may not institute a standalone action to recover on a derivative discrimination claim. Instead, she must proceed jointly with (or after) the principal plaintiff. Noting that an Article 1802 action accrues only when the plaintiff can exercise his right to sue, see, e.g., Vega Lozada v. J. Pérez & Compañía, 135 P.R. Dec. 746, 754-55 (1994), the relatives posit that their claims did not accrue until (at the earliest) the principal plaintiff had filed suit.
This is anfractuous reasoning. For one thing, none of the cases cited by the relatives alters the ordinary knowledge-based accrual rule articulated in the Civil Code. See P.R. Laws Ann. tit. 31, § 5298(2). Those eases merely exemplify the workings of that rule in particular factual scenarios. Because there is no dispute here as to when the relatives learned of their injury and its author, these cases offer them no succor.
For another thing, the relatives have not identified any Puerto Rico Supreme Court *321 decision holding that relatives must file their derivative claims simultaneously with (or after) the principal plaintiffs filing of his claim.[4] The intermediate appellate court has suggested that the filing of a standalone claim is a viable option, see Santos Cabrera, 2005 WL 3720002, at *8, and we see no logical impediment to the commencement of such an independent action.
After all, the Puerto Rico Supreme Court consistently has referred to relatives’ causes of action as “separate” or “independent” from the principal plaintiffs claim. See, e.g., Martínez Campos, 138 P.R. Dec. at 371; Maldonado Rodríguez, 138 P.R. Dec. at 276; Santini Rivera, 137 P.R. Dec. at 5-6. Moreover, the three elements of a derivative discrimination claim under Article 1802 — injury, wrongful conduct, and causation — are not dependent upon the outcome of a parallel action but, rather, are susceptible of proof in a freestanding action.
To be sure, that proof overlaps to a degree with the proof that ordinarily would be adduced in the principal plaintiffs suit; for example, each action would require proof of the defendant’s discriminatory conduct vis-a-vis the principal plaintiff. But in order to prevail on a derivative claim, a relative also must prove that she herself suffered an injury (distinct from any injury endured by the principal plaintiff). And as with any Article 1802 claim, the relative must show that her injury was proximately caused by the defendant’s wrongful conduct.
Especially given that a derivative discrimination claim arises from a different font of liability (Article 1802) than the principal claim and that the two types of claims require proof of distinct elements, we hold that a relative may maintain an independent action under Article 1802, separate and apart from any action prosecuted by the principal plaintiff.[5]
This holding blunts the force of the relatives’ suggestion that applying the normal accrual rule would violate due process because it would place derivative plaintiffs in the untenable position of having to bring suit on their derivative claims before they possibly could do so. Cf. Alicea v. Córdova, 117 P.R. Dec. 676, 695-98 (1986) (finding due process violation because statute of limitations effectively required aggrieved parties to sue before they knew of their injury). The fears upon which that suggestion rests are imaginary because, as we have explained, the relatives could have brought standalone claims at any time within the one-year limitations period. They were not obliged to await any particular action by the principal plaintiff, much less a resolution of the principal plaintiffs claim.
At any rate, the relatives could have awaited the principal plaintiffs filing of suit yet still have safeguarded their rights by the simple expedient of making an extrajudicial claim within the one-year limitations period. See P.R. Laws Ann. tit. 31, § 5303; Santos Cabrera, 2005 WL 3720002, at *8. That proffer would have informed J.C. Penney of the nature of their grievance and their desired relief. See Secretario Del Trabajo v. Finetex Hosiery Co., 116 P.R. Dec. 823, 827 (1986). *322 Such an extrajudicial claim would have required no particular formality. Rodríguez Narváez v. Nazario, 895 F.2d 38, 44 (1st Cir.1990). This device easily could have been used, had the relatives so elected, as a means of awaiting the principal plaintiffs exhaustion of administrative remedies.
To recapitulate, a favorable resolution of the principal plaintiffs discrimination claim is not an element of a relative’s derivative claim under Article 1802. That being so, the relatives’ claims in this case accrued at the time that they learned of Gonzalez’s demotion in September of 2005. They could have either sued independently on those claims at any time within the one-year limitations period (regardless of whether or when the principal plaintiff sued) or stopped the ticking of the clock by filing extrajudicial claims. They did neither, and the limitations period expired. Consequently, their claims are time-barred unless they are entitled to the benefit of tolling. It is to that subject that we now turn.
This appeal requires us to discuss two different forms of tolling. To begin, Puerto Rico law contemplates tolling when an action accrues during the minority of an individual plaintiff. See P.R. Laws Ann. tit. 32, § 254(1). Here, the amended complaint describes one of the derivative plaintiffs, Carlos Manuel González Bermúdez (the principal plaintiffs son), as twelve years old. The age of majority in Puerto Rico is twenty-one. See P.R. Laws Ann. tit. 31, § 971. Thus, the statute of limitations on Carlos’s Article 1802 claim is tolled until he reaches that age. See, e.g., Rentas Santiago v. Autonomous Mun’y of Ponce, 453 F.Supp.2d 387, 392 (D.P.R. 2006). It follows that the district court erred in dismissing Carlos’s claim as untimely.
The other relatives are adults and, thus, are not entitled to the benefit of age-based tolling. If tolling applies to their behoof, it must be rooted in a different mechanism. Although the relatives’ brief is vague in this respect, the only possibility appears to stem from the principal plaintiffs filing of an administrative complaint with the EEOC.
Of course, González was required to employ certain administrative procedures before proceeding with his ADEA claim. See 29 U.S.C. §§ 626(d)(1), 633(b). But that filing served only to enable González to perfect his ADEA claim, and to toll the time for suing on his claim under Puerto Rico’s anti-discrimination law. See, e.g., Rodríguez-Torres v. Caribbean Forms Mfr., Inc., 399 F.3d 52, 61 (1st Cir.2005); Mercado-García v. Ponce Fed. Bank, 979 F.2d 890, 895-96 (1st Cir.1992); see also P.R. Laws Ann. tit. 29, § 150; Matos Molero v. Roche Prods., Inc., 132 P.R. Dec. 470, 486 (1993). The relatives’ claims are Article 1802 claims, not discrimination claims as such. In other words, they lie beyond the reach of this tolling effect. Thus, Gonzalez’s filing with the EEOC did not toll the statute of limitations on the relatives’ Article 1802 claims. Sánchez Ramos v. P.R. Police Dep’t, 392 F.Supp.2d 167, 181-82 (D.P.R.2005); Cintrón v. Puerto Rico, 127 P.R. Dec. 582, 595-96 (1990); cf. Johnson v. Ry. Express Agency, Inc., 421 U.S. 454, 465-66, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975) (holding that commencement of EEOC proceedings for plaintiffs Title VII claim did not toll statute of limitations applicable to plaintiffs counterpart claim under 42 U.S.C. § 1981).
The short of it is that the relatives (other than the minor) have advanced no legitimate reason to support tolling of the limitations period on their derivative claims. Hence, those claims are time-barred.
*323 Finally, we deal with the possibility of certification-a possibility raised sua sponte by our dissenting brother. Certification of questions of local law from one court to another is, by its very nature, a cumbersome and time-consuming process. The use of that device stops a case in its tracks, multiplies the work of the attorneys, and sharply increases the costs of litigation. Not surprisingly, then, we have held with monotonous regularity that certification is inappropriate when the course that the state courts would take is reasonably clear. See, e.g., Díaz-Ramos v. Hyundai Motor Co., 501 F.3d 12, 17 (1st Cir.2007); Porter v. Nutter, 913 F.2d 37, 41 n. 4 (1st Cir. 1990); Bi-Rite Enters., Inc. v. Bruce Miner Co., 757 F.2d 440, 443 n. 3 (1st Cir. 1985).
This is just such a case. Although the Puerto Rico Supreme Court has not answered the disputed question in haec verba, there is every reason to believe that it will do so in the way that we articulate. The only tea leaf fairly suggesting that a derivative claim under Article 1802 does not accrue until there has been a successful resolution of the principal plaintiffs discrimination claim is dictum in a decision of an intermediate appellate court (González Vázquez). That dictum is flatly contradicted by the holding of the same court in a different case. See Santos Cabrera, 2005 WL 3720002, at *8.
Equally as important, the rule proposed by the González Vázquez dictum must be wrong; taken literally, it would mean that the trials of the principal and derivative claims never could be joined in a single proceeding because the former would need to be tried to a conclusion before the latter could be tried. There is no reason to think that the Puerto Rico Supreme Court would subscribe to so inefficient an arrangement.[6]
III. CONCLUSION
We need go no further. We hold that the district court correctly determined that the claims of the relatives, other than the minor plaintiff Carlos Manuel González Bermúdez, were untimely and, thus, appropriately dismissed those claims. We affirm that ruling, while at the same time reversing the court’s erroneous dismissal of the minor plaintiffs claim.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. All parties shall bear their own costs.

. The amended complaint alleges that "[a]t the same time” it demoted González, J.C. Penney "opened positions similar in pay grade” to his former job, but did not offer any of those positions to him. Similarly, the charge that González filed with the EEOC alleged that the discriminatory conduct began and ended on September 18, 2005 (the date of his demotion). For ease in exposition, we therefore refer to the September 18 demotion as embodying the totality of the allegedly discriminatory conduct.

. In a ruling that is not contested on this appeal, the lower court decided that the amended complaint relates back to the date of the commencement of the action (March 27, 2007). See González I, 247 F.R.D. at 281.

. Even though we accept the certification in this instance, we caution that piecemeal appeals are disfavored and that, therefore, Rule 54(b) should be employed with great circumspection. A certifying court must weigh efficiency concerns, see, e.g., Curtiss-Wright Corp. v. Gen. Elec. Co., 446 U.S. 1, 8, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980); consider the various criteria delineated in our case law, see, e.g., Spiegel, 843 F.2d at 43 & n. 3; and articulate a cogent rationale supporting certification, see, e.g., Quinn v. City of Boston, 325 F.3d 18, 26 (1st Cir.2003). A Rule 54(b) certification should not be made available simply because a parly requests it.

. Although one district court has suggested this possibility, see Baralt, 183 F.Supp.2d at 488, that result is not compatible with either relevant precedent or logic.

. This is not to say that relatives and their principal cannot, if they so choose, join in a single simultaneously filed suit. Nor do we overlook that when the principal and the relatives sue independently, consolidation of the actions frequently will be the option of choice.

. The dissent expresses concern that our decision not to certify the question denies the relatives "the proper application of the law,” post at 325 n. 4 (Torruella, J., dissenting), because this court rather than the Puerto Rico Supreme Court has decided the question. This concern is misplaced for three reasons. First, the relatives chose a federal forum even though they could have sued in the local courts. Second, they have not asked us to certify the question even though they could have done so. Third — and most salient — we do not believe that there is any reasonable doubt about the correct result.